## IN THE UNITED STATES DISTRICT COURT IN AND FOR THE
## EASTERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| CASSANDRA ELIZABETH FREE and WILLIAM BRETT FREE, individually and as the Natural Parents and Next of Friend of ANDREW BRADY FREE, deceased minor child, | ) ) ) ) ) | |
| Plaintiffs, | ) ) | |
| vs. | ) ) | Case No. 22-CV-167-JAR |
| (1) MALIBU BOATS, LLC; (2) MALIBU BOATS, INC.; and (3) MALIBU BOATS WEST, INC. | ) ) ) ) | JURY TRIAL DEMANDED |
| Defendants. | ) | |

## COMPLAINT

CASSANDRA and WILLIAM FREE ("Plaintiffs"), individually and as Natural Parents and Next of Friend of ANDREW BRADY FREE, a deceased minor child, by and through their attorneys, Clark O. Brewster, Guy A. Fortney and Montgomery L. Lair of the law firm Brewster & De Angelis, P.L.L.C., and for their claims against (1) MALIBU BOATS, LLC; (2) MALIBU BOATS, INC.; and (3) MALIBU BOATS WEST, INC., state and allege as follows:

## JURISDICTION AND VENUE

1.     This is an action for negligence, product liability and the wrongful death of ANDREW BRADY FREE, age 9, on June 6, 2020.

2.     Plaintiffs, CASSANDRA ELIZABETH FREE and WILLIAM BRETT FREE are the natural parents of the decedent herein, ANDREW BRADY FREE.

3.     At all times relevant hereto, Plaintiffs are residents of Wagoner County, State of Oklahoma and bring this action on behalf of all heirs to the Estate of ANDREW BRADY FREE and all damages available for wrongful death under 12 O.S. § 1053.

1.     Defendant MALIBU BOATS, INC. is a Delaware company with its principal place of business located at 5075 Kimberly Way, Loudon, Tennessee 37774. At all times relevant hereto, MALIBU BOATS, INC. was in the business of and is a leading designer, manufacturer and marketer of a diverse range of recreational powerboats, including performance sport, sterndrive and outboard boats including the 1997 Malibu Response that is the Subject Boat in this case, both in Oklahoma and throughout the United States.

2.     Defendant MALIBU BOATS, LLC is a Delaware company with its principal place of business located at 5075 Kimberly Way, Loudon, Tennessee 37774. At all times relevant hereto, MALIBU BOATS, LLC was in the business of and is a leading designer, manufacturer and marketer of a diverse range of recreational powerboats, including performance sport, sterndrive and outboard boats including the 1997 Malibu Response that is the Subject Boat in this case, both in Oklahoma and throughout the United States.  MALIBU BOATS, LLC is a wholly owned subsidiary of MALIBU BOATS, INC.

3.     Defendant MALIBU BOATS WEST, INC. is a Delaware company with its principal place of business located at 5075 Kimberly Way, Loudon, Tennessee 37774. At all times relevant hereto, MALIBU BOATS WEST, INC. was in the business of and is a leading designer, manufacturer and marketer of a diverse range of recreational powerboats, including performance sport, sterndrive and outboard boats including the 1997 Malibu Response that is the Subject Boat in this case throughout Oklahoma and the United States.

4.      MALIBU BOATS WEST, INC. was purchased by MALIBU BOATS, LLC in 2006.  MALIBU BOATS, INC. and MALIBU BOATS, LLC and is the legal successor of, and responsible for the liabilities of MALIBU BOATS WEST, INC. as they continued the business of MALIBU BOATS WEST, INC. as the leading designer, manufacturer and marketer of a diverse range of recreational powerboats, including performance sport, sterndrive and outboard boats built under the Malibu brand throughout the State of Oklahoma and the United States.

5.      MALIBU BOATS, INC., MALIBU BOATS, LLC and MALIBU BOATS WEST, INC.  hereinafter referred to as the "Malibu Defendants", designed, assembled, manufactured, inspected, tested, marketed, placed into the stream of commerce, and/or sold the Subject Boat.

6.      Complete diversity exists among the parties and the Court has jurisdiction over the matter and the parties pursuant to 28 U.S.C § 1332.

7.      The amount in controversy herein exceeds Seventy-five Thousand Dollars and No/100 ($75,000.00), exclusive of interest and costs.

8.      Venue is proper in this Court pursuant to 28 U.S.C. § 1391.

## OPERATIVE FACTS

9.      Plaintiffs incorporate by reference paragraphs 1 through 10 above as though fully set forth herein.

10.     The product at issue in this matter is a 20' Malibu Response manufactured on or about January, 1997 in Loudon, Tennessee (Hull ID No. US- MB2P7233A797, Serial No. P7233) ("Subject Boat"). The Malibu Defendants designed, assembled, manufactured,

inspected, tested, marketed, placed into the stream of commerce, and/or sold the Subject Boat.

11.     The Malibu Defendants are responsible for ensuring that its boats are not unreasonably dangerous, that they conform to Malibu's design specifications, that they are safe for their intended and foreseeable use, that they fully comply with all industry standards and federal regulations, that Malibu customers and end users are adequately educated about how to properly use its products and how to spot potential problems, especially known problems, and that Malibu customers and end users are warned about the dangers and hazards of Malibu products especially those dangers and hazards that Malibu knows or should know about.

12.     The Malibu Defendants are responsible for monitoring safety issues and safety hazards with Malibu boats-especially those that are known, knowable or reported to Defendant Malibu-and properly investigating and addressing those issues to discover whether those safety issues/hazards are due, in whole or in part, to Malibu's design or manufacture.

13.     The Malibu Defendants are responsible for ensuring that Malibu does not make any misleading or false statements about its boats, the design of those boats, the safety of those boats (or the lack thereof), the compliance of those boats with industry standards, the testing of those boats, the capability of those boats, or the performance of those boats.

14.     Upon information and belief, the Malibu Defendants had previous knowledge of occurrences and dangers of carbon monoxide poisoning on recreational boats through a variety of channels including, but not limited to: (1) media scrutiny of the issue;

4

(2) efforts of consumer advocacy groups; (3) numerous direct appeals by individual members of the public who took time to either write or call concerning the dangers of carbon monoxide; and (4) direct knowledge of legislative efforts calling for measures to address and warn of the dangers of carbon monoxide.

15.     Due to the unsafe, defective, and/or negligent design, manufacturing, assembly, production, creation, distribution, and sale of the Subject Boat, dangerously high levels of carbon monoxide were permitted to accumulate in and/or around the stern of the Subject Boat and to surround the Subject Boat's "Rear Passenger Seats" during reasonably foreseeable uses of the Subject Boat, including occupying the designated "passenger seats located in the rear of the boat" while the Subject Boat's motor was operating without detection or warning.

16.     In addition, the Malibu Defendants, as the designers, manufacturers, marketers, vendors, and distributors of the Subject Boat, failed to provide adequate warnings to passengers of the Subject Boat about the risk being exposed to dangerously high levels of carbon monoxide during reasonably foreseeable uses of the Subject Boat, including occupying the designated "passenger seats located in the rear of the boat" while the Subject Boat's motor was operating.

17.     While on notice of occurrences of poisoning from exposure to carbon monoxide and its ensuing dangers and risks, the Malibu Defendants knowingly and with deliberate indifference to the dangers and consequences to the public, and without issuing or posting any warnings, placed into the stream of commerce the Subject Boat which allowed exposure by passengers including Plaintiffs herein and their three young children to dangerously high levels of carbon monoxide without detection or warning which

accumulated in and/or around the stern of the Subject Boat surrounding the Subject Boat's "Rear Passenger Seats" during reasonably foreseeable uses of the Subject Boat, including occupying the designated "passenger seats located in the rear of the boat" while the Subject Boat's motor was operating.

18.     The Subject Boat was in a condition unreasonably dangerous to the decedent in that the Subject Boat had a defective and unreasonably dangerous design and components which failed to avoid and/or protect passengers from exposure to dangerously high and potentially deadly levels of carbon monoxide without detection or warning.

19.     The unreasonably dangerous condition which failed to avoid and/or protect passengers from exposure to dangerously high and potentially deadly levels of carbon monoxide was dangerous to an extent beyond that which would be contemplated by the ordinary consumer including the Plaintiffs herein and their three young children, with ordinary common knowledge to the community.

20.     As a direct and proximate result of the Subject Boat's defective design, manufacturing, warnings, instructions, and/or failure to conform with the manufacturer's representations, the Free family was unaware that they were exposed to dangerously high levels of carbon monoxide.

21.     Plaintiffs seek damages from the Malibu Defendants who knowingly and with deliberate indifference to the dangers to the public placed the Subject Boat and many other Malibu manufactured boats of similar design, into the stream of commerce in an unreasonably dangerous and defective condition.

22.     ANDREW BRADY FREE'S death from prolonged exposure to carbon monoxide was both foreseeable and preventable by the Malibu Defendants.

## THE EVENTS OF JUNE 6, 2020

23.    On or about June 6, 2020, the Free family was operating the subject boat on Lake Eufaula, McIntosh County, OK.

24.    During the time of operation, the Free family children, three boys – J.F., B.F. and ANDREW FREE, decedent herein, sat in the "Rear Passenger Seats" while the Plaintiffs instructed family friends who were learning to wakeboard behind the Subject Boat.

25.    During the normal and contemplated use of the Subject Boat, the Free family children, three boys - J.F., B.F. and ANDREW FREE, decedent herein, sitting in the "Rear Passenger Seats" were exposed to dangerously high levels of carbon monoxide without detection or warning.

26.    At the end of the day, Mr. Free brought the boat into the public dock to unload the equipment in the boat. After tying up the boat and turning off the engine, Plaintiffs began unloading equipment, when their 9-year-old son, ANDREW FREE who was sitting at the back of the boat when he went unconscious and rolled off into the water. He did not immediately resurface and Mr. Free dove into the water to recover him.

27.    Emergency responders (EMS) state that ANDREW FREE was in the water for approximately 10 minutes. Despite life-saving measures, EMS reported that ANDREW FREE was in a state of pulseless electrical activity (PEA) when they arrived.

28.    ANDREW FREE was transported via ambulance to St. Francis Muskogee Emergency Department in Muskogee, Oklahoma arriving at 9:20 PM on June 6, 2020. ANDREW FREE never regained a pulse or cardiac rhythm and lifesaving efforts ceased at 9:45 PM.

29.     The Report of the Medical Examiner for the State of Oklahoma identified the cause of death as "drowning due to acute carbon monoxide toxicity."

30.     Additionally, the Report of Laboratory Analysis recorded that blood testing revealed a fatal carbon monoxide-hemoglobin saturation level of 72%.

31.     J.F. was also taken to St. Francis Muskogee Emergency Department in Muskogee, Oklahoma with complaints of headache and nausea.  Blood tests revealed that he had an initial carbon monoxide-hemoglobin saturation level of 13.5%.[1]   He was provided oxygen therapy through a non-rebreather mask.  His blood retested at a carbon monoxide-hemoglobin saturation level of 6.8%.  He was diagnosed with carbon monoxide poisoning.

32.     B.F. was also taken to St. Francis Muskogee Emergency Department in Muskogee, Oklahoma with complaints of headache and nausea.  Blood tests revealed that he had an initial carbon monoxide-hemoglobin saturation level of 6.3%.  He was provided oxygen therapy through a nasal cannula.  His blood retested at a carbon monoxide-hemoglobin saturation level of 2.4%.  He was diagnosed with carbon monoxide poisoning.

33.     Engine exhaust contains Carbon Monoxide (CO) which is a colorless, odorless and poisonous gas.

34.     It was known to the Malibu Defendants that the exhaust from the engine on a watercraft contains Carbon Monoxide (CO) which is a colorless, odorless and poisonous gas and that exposure to CO can cause severe injury or death.

---

[1] The medical records reflect that normal or non-alarming carbon monoxide-hemoglobin saturation level is 0 to 5.

35.     The Malibu Defendants describe in the 1997 Owner's Manual the "Rear Passenger Seats" as "passenger seats located in the rear of the boat are designed to comfortably seat three persons."

36.     While seated in the "Rear Passenger Seats," J.F., B.F. and ANDREW FREE, decedent herein, were exposed to and inhaled Carbon Monoxide (CO) generated by the engine during the normal and contemplated use of the Subject Boat.

37.     Due to the unsafe, defective, and/or negligent design, manufacturing, assembly, production, creation, distribution, and sale of the Subject Boat, dangerously high levels of carbon monoxide were permitted to accumulate in and/or around the stern of the Subject Boat and to surround the Subject Boat's "Rear Passenger Seats" during reasonably foreseeable uses of the Subject Boat, including using the "passenger seats located in the rear of the boat" during the normal and contemplated use of the Subject Boat.

38.     In addition, the Malibu Defendants, as the designers, manufacturers, marketers, vendors, and distributors of the Subject Boat, failed to provide adequate warnings to passengers of the Subject Boat about the risk being exposed to dangerously high levels of carbon monoxide during reasonably foreseeable uses of the Subject Boat, including using the "passenger seats located in the rear of the boat" during normal operation of the Subject Boat.

39.     The subject boat at the time of manufacture and placement into the stream of commerce by the Malibu Defendants did not have any warning labels or stickers warning of the dangers of Carbon Monoxide (CO) poisoning.

40.     On June 6, 2020, the Subject Boat did not have any warning labels or stickers warning of the dangers of Carbon Monoxide (CO) poisoning.

41.     The 1997 Malibu Owner's Manual did not contain any warning of the dangers of Carbon Monoxide (CO) poisoning.

42.     The 1997 Malibu Owner's Manual did not warn users including the Plaintiffs herein that Carbon Monoxide (CO) will exist around the back of the boat when the engine is running or that engine exhaust contains carbon monoxide, which is a deadly, odorless, colorless gas.

**FIRST CLAIM FOR RELIEF**
**MANUFACTURER'S PRODUCTS LIABILITY - STRICT LIABILITY**
<u>**ALL DEFENDANTS**</u>

43.     Plaintiffs incorporate by reference paragraphs 1 through 44 as set forth above.

44.     The Malibu Defendants engaged in the business of designing, manufacturing, assembling, producing, constructing, marketing, distributing, and selling recreational boats including the Subject Boat and their component parts, which the Malibu Defendants knew would be purchased and used by the general public.

45.     The Malibu Defendants designed, manufactured, assembled, constructed, produced, distributed, and sold the Subject Boat involved in this action.

46.     The Subject Boat was expected to and did reach the Plaintiffs without substantial or material change in its condition from when it was placed into the stream of commerce by the Malibu Defendants.

47.     The Free family, Plaintiffs herein were foreseeable users of the Subject Boat and were using it in a foreseeable manner.

48.     The Malibu Defendants designed, manufactured, assembled, constructed, produced, tested, inspected, marketed, distributed, and sold the Subject Boat in a manner

10

so as to render the Subject Boat defective and unsafe for its intended uses or reasonably foreseeable uses, including, but not limited to the following:

a. The Subject Boat was not reasonably fit for its intended uses or reasonably foreseeable uses;

b. The Subject Boat was in a condition unreasonably dangerous to the decedent in that the Subject Boat had a defective and unreasonably dangerous design and components which failed to avoid and/or protect passengers from exposure to dangerously high and potentially deadly levels of carbon monoxide;

c. The Subject Boat was in a condition unreasonably dangerous to the decedent in that the Subject Boat had a defective and unreasonably dangerous design and components which caused passengers to be exposed to dangerously high and potentially deadly levels of carbon monoxide without detection or warning;

d. The Subject Boat was in a condition unreasonably dangerous to the decedent in that the Subject Boat had a defective and unreasonably dangerous design and components which encouraged and invited passengers and occupants to use and occupy spaces on the boat, including the "passenger seats located in the rear of the boat" during normal operation of the Subject Boat where dangerously high and potentially deadly levels of carbon monoxide accumulate;

e. The Subject Boat was in a condition unreasonably dangerous to the decedent in that the Subject Boat had a defective and unreasonably

dangerous design and components which do not utilize, implement, or include safety measures that would protect passengers and occupants from exposure to dangerously high and potentially deadly levels of carbon monoxide without detection or warning;

f.  The Subject Boat was in a condition unreasonably dangerous to the decedent in that the Subject Boat had a defective and unreasonably dangerous design and components that did not include adequate carbon monoxide safety features including detection or warnings;

g.  The Subject Boat was in a condition unreasonably dangerous to the decedent in that the Subject Boat had a defective and unreasonably dangerous design and components that failed to detect and warn of dangerously high and potentially deadly levels of carbon monoxide in the vicinity of passengers and occupants;

h.  The Subject Boat lacked reasonable and adequate warnings or instructions to users, passengers, and occupants of the Subject Boat as to the Subject Boat's dangerous propensity, including the potential that passengers will be exposed to dangerously high and potentially deadly levels of carbon monoxide;

i.  The Subject Boat lacked reasonable and adequate warnings or instructions to warn users, passengers, and occupants of circumstances that may result in exposure to dangerously high and potentially deadly levels of carbon monoxide;

12

j.  The Subject Boat lacked reasonable and adequate warnings or instructions at the time of marketing and post-marketing;

k.  The Subject Boat was designed, manufactured, and assembled with materials, components, and other parts that may result in passenger exposure to dangerously high and potentially deadly levels of carbon monoxide;

l.  The Subject Boat was, at the time it left the control of its manufacturer, designed such that the foreseeable risks associated with its design exceeded the benefits associated with that design;

m.  The Subject Boat's design was more dangerous than a reasonably prudent consumer would expect when using the Subject Boat in its intended or reasonably foreseeable manner.

49.  As a direct and proximate result of the Malibu Defendants' acts and/or failures to act, ANDREW BRADY FREE died and Plaintiffs have suffered damages in the form of burial expenses, grief, mental pain and anguish, emotional distress, loss of anticipated services and support, loss of the companionship and love of ANDREW BRADY FREE, destruction of the parent-child relationship, loss of the monies expended in the support, maintenance and education of ANDREW BRADY FREE all in excess of Twenty-five Million and No/100 Dollars ($25,000,000.00).  The Malibu Defendants are to be held strictly liable in tort for all damages. Plaintiffs further seek an award of punitive or exemplary damages against the Malibu Defendants in an amount equal to Fifty Million and No/100 Dollars ($50,000,000.00) or the economic benefit achieved, whichever is greater,

for Defendants' conscious and reckless disregard for public safety and life-threatening conduct and for which Defendants are to be held strictly liable.

**SECOND CLAIM FOR RELIEF**
**WRONGFUL DEATH/NEGLIGENCE**
**ALL DEFENDANTS**

50.     Plaintiffs incorporate by reference paragraphs 1 through 51 as set forth above.

51.     The Malibu Defendants owed a duty of care to Plaintiffs, ANDREW BRADY FREE and to other foreseeable users of its product who might be injured, to design, manufacture, assemble and distribute a product free of any unreasonably dangerous defects.  The Malibu Defendants owed a further duty of care to Plaintiffs, ANDREW BRADY FREE and other foreseeable users of its product who might be injured, to issue warnings regarding the possible dangers associated with its product, which duty was a continuing duty.  The Malibu Defendants owed a further duty of care to Plaintiffs, ANDREW BRADY FREE and to other foreseeable users of its product who might be injured, to timely recall its product when the Malibu Defendants knew or reasonably should have known that its product was in an unreasonably dangerous and defective condition. The Malibu Defendants owed a further duty to Plaintiffs, ANDREW BRADY FREE and to other foreseeable users of its product who might be injured, to timely recall its product and install reasonable, feasible and/or available safety equipment.

52.     The Malibu Defendants breached its duties to Plaintiffs and ANDREW BRADY FREE in all respects.  The injuries sustained in this case occurred as a direct and proximate result of the gross negligence, carelessness, disregard and recklessness of the Malibu Defendants.  The Malibu Defendants' conduct when viewed in its totality and in

14

consideration of the duties owed by the Malibu Defendants and compared with reasonably accepted standards must be characterized as unacceptably deficient, grossly negligent, and a calculated decision that would threaten human life.  The acts and omissions complained of herein include, but are not limited, to the following:

a.   The Subject Boat was not reasonably fit for its intended uses or reasonably foreseeable uses;

b.   By negligently designing the Subject Boat with a defective and unreasonably dangerous design and components which failed to avoid and/or protect passengers from exposure to dangerously high and potentially deadly levels of carbon monoxide;

c.   By negligently designing the Subject Boat with a defective and unreasonably dangerous design and components which caused passengers to be exposed to dangerously high and potentially deadly levels of carbon monoxide without detection or warning;

d.   By negligently designing the Subject Boat with a defective and unreasonably dangerous design and components which encouraged and invited passengers and occupants to use and occupy spaces on the boat, including the "passenger seats located in the rear of the boat" during normal operation of the Subject Boat where dangerously high and potentially deadly levels of carbon monoxide accumulate;

e.   By negligently designing the Subject Boat with a defective and unreasonably dangerous design and components which do not utilize, implement, or include safety measures that would protect passengers

and occupants from exposure to dangerously high and potentially deadly levels of carbon monoxide including detection or warnings;

f.  By negligently designing the Subject Boat with a defective and unreasonably dangerous design and components that did not include adequate carbon monoxide safety features;

g.  By negligently designing the Subject Boat with a defective and unreasonably dangerous design and components that failed to detect and warn of dangerously high and potentially deadly levels of carbon monoxide in the vicinity of passengers and occupants;

h.  By negligently designing the Subject Boat that lacked reasonable and adequate warnings or instructions to users, passengers, and occupants of the Subject Boat as to the Subject Boat's dangerous propensity, including the potential that passengers will be exposed to dangerously high and potentially deadly levels of carbon monoxide;

i.  By negligently designing the Subject Boat that lacked reasonable and adequate warnings or instructions to warn users, passengers, and occupants of circumstances that may result in exposure to dangerously high and potentially deadly levels of carbon monoxide;

j.  By negligently designing the Subject Boat that lacked reasonable and adequate warnings or instructions at the time of marketing and post-marketing;

k.  By negligently designing, manufacturing, and assembling the Subject Boat with materials, components, and other parts that may result in

16

passenger exposure to dangerously high and potentially deadly levels of carbon monoxide;

l.   By negligently designing, manufacturing, and assembling the Subject Boat, such that, at the time it left the control of its manufacturer, the foreseeable risks associated with its design exceeded the benefits associated with that design;

m.   By negligently designing, manufacturing, and assembling the Subject Boat, such that, the design was more dangerous than a reasonably prudent consumer would expect when using the Subject Boat in its intended or reasonably foreseeable manner.

53.   As a direct and proximate result of the Malibu Defendants' negligence, ANDREW BRADY FREE died and Plaintiffs have suffered damages in the form of burial expenses, grief, mental pain and anguish, emotional distress, loss of anticipated services and support, loss of the companionship and love of ANDREW BRADY FREE, destruction of the parent-child relationship, loss of the monies expended in the support, maintenance and education of ANDREW BRADY FREE all in excess of Twenty-five Million and No/100 Dollars ($25,000,000.00).   Plaintiffs further seek an award of punitive or exemplary damages against the Malibu Defendants in an amount equal to Fifty Million and No/100 Dollars ($50,000,000.00) or the economic benefit achieved by the Malibu Defendants due to its tortious conduct, whichever is greater.

**THIRD CLAIM FOR RELIEF**
**SURVIVAL ACTION**
**<u>ALL DEFENDANTS</u>**

54.     Plaintiffs incorporate by reference paragraphs 1 through 52 as set forth above.

55.     As a direct and proximate result of the Malibu Defendants' actions and/or omissions, the decedent herein, ANDREW BRADY FREE, suffered severe physical and mental pain and anguish associated with his death, all in excess of Twenty-five Million and No/100 Dollars ($25,000,000.00). Plaintiffs further seek an award of punitive or exemplary damages against the Malibu Defendants in excess of Fifty Million and No/100 Dollars ($50,000,000.00) for Defendants' conscious and reckless disregard for public safety.

**FOURTH CLAIM FOR RELIEF**
**NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS**
**ALL DEFENDANTS**

56.     Plaintiffs incorporate by reference paragraphs 1 through 57 as set forth above.

57.     CASSANDRA ELIZABETH FREE and WILLIAM BRETT FREE are the natural parents of the decedent herein, ANDREW BRADY FREE.

58.     Plaintiffs were present and had direct involvement in the incident on June 6, 2020.

59.     As a direct and proximate result of the Malibu Defendants' actions and/or omissions, Plaintiffs, CASSANDRA ELIZABETH FREE and WILLIAM BRETT FREE have suffered from Defendants' negligent infliction of emotional distress arising from the death of their son and decedent herein, ANDREW BRADY FREE, suffered severe mental pain and anguish associated with his death, all in excess of Twenty-five Million and No/100 Dollars ($25,000,000.00). Plaintiffs further seek an award of punitive or exemplary

damages against the Malibu Defendants in excess of Fifty Million and No/100 Dollars ($50,000,000.00) for Defendants' conscious and reckless disregard for public safety.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiffs pray for judgment against MALIBU BOATS, INC., MALIBU BOATS, LLC and MALIBU BOATS WEST, INC., as follows:

A.    For judgment on their *First Claim for Relief* and for an award of compensatory damages in an amount in excess of Twenty-five Million and No/100 Dollars ($25,000,000.00) and exemplary or punitive damages against MALIBU BOATS, INC., MALIBU BOATS, LLC and MALIBU BOATS WEST, INC., in an amount equal to Fifty Million and No/100 Dollars ($50,000,000.00) or the economic benefit achieved by MALIBU BOATS, INC., MALIBU BOATS, LLC and MALIBU BOATS WEST, INC., due to its tortious conduct, whichever is greater, and to deter the Defendants from committing such reckless, grossly negligent and life threatening conduct in the future, and to apprise the public at large that society does not condone such actions or omissions to act.

B.    For judgment on their *Second Claim for Relief* and for an award of compensatory damages in an amount in excess of Twenty-five Million and No/100 Dollars ($25,000,000.00) and exemplary or punitive damages against MALIBU BOATS, INC., MALIBU BOATS, LLC and MALIBU BOATS WEST, INC., in an amount in excess of Fifty Million and No/100 Dollars ($50,000,000.00) to deter the Defendants from committing such reckless, gross negligent and life threatening conduct in the future, and to apprise the public at large that society does not condone such actions or omissions to act.

C.      For judgment on their *Third Claim for Relief* and for an award of compensatory damages in an amount in excess of Twenty-five Million and No/100 Dollars ($25,000,000.00) and exemplary or punitive damages against MALIBU BOATS, INC., MALIBU BOATS, LLC and MALIBU BOATS WEST, INC., in an amount in excess of Fifty Million and No/100 Dollars ($50,000,000.00) to deter the Defendant from committing such reckless, gross negligent and life threatening conduct in the future, and to apprise the public at large that society does not condone such actions or omissions to act.

D.      For judgment on their *Fourth Claim for Relief* and for an award of compensatory damages in an amount in excess of Twenty-five Million and No/100 Dollars ($25,000,000.00) and exemplary or punitive damages against MALIBU BOATS, INC., MALIBU BOATS, LLC and MALIBU BOATS WEST, INC., in an amount in excess of Fifty Million and No/100 Dollars ($50,000,000.00) to deter the Defendants from committing such reckless, gross negligent and life threatening conduct in the future, and to apprise the public at large that society does not condone such actions or omissions to act.

E.      For the costs of this action, interest as provided by law and for such other and further relief as this Court deems just and proper.

ATTORNEYS' LIEN CLAIMED

Dated this ____ day of June, 2022

BREWSTER & De ANGELIS, P.L.L.C.

By:   _____
      Clark O. Brewster - OBA #1114
      Guy A. Fortney, OBA #17027
      Montgomery L. Lair – OBA #17546
      2617 East 21st Street

20

Tulsa, OK 74114
(918) 742-2021

ATTORNEYS FOR PLAINTIFFS